Baldwin, J.
The case presented for our consideration is briefly this: Reid, the owner of a negro boy, on which he had given a deed of trust, agreed with Strider to place him in his possession till the 1st of January 1834, when Reid was to refund the money secured by the trust deed, (which Strider undertook to discharge,) and take back the boy, or receive the balance he should then be worth at a fair valuation, and make a good title for him. Reid failed to perform the condition, and afterwards his administrator brought a suit in equity to redeem the slave, upon the allegation that the transaction was a mortgage ; and it was so held by the Circuit court. Reid’s administrator was therefore charged with the money advanced, with interest from the 1st of January 1834, and credited by the hires: and a small balance being found in his favour, Strider *80 was decreed to pay it, and to deliver the slave. From this decree Strider appealed, and this Court, in May 1845, held the contract to be not a mortgage, but a conditional sale, and the sale not having been abrogated, by Perforrnance of the condition, that he became Strider’s property, without accountability for hires. The decree of the Circuit court was therefore reversed, and Strider decreed to pay the balance of the value of the boy on the 1st of January 1834, after deducting the money advanced, with interest from that date. See Reid's adm'r v. Strider, 2 Gratt. 34. And now, nearly five years after the decree of this Court, a motion is made here, either to set it aside, or to award a writ of error coram vobis; on the ground that at the time of its rendition, Strider had died, to wit, in the month of March previously, and consequently, that the case was prematurely and irregularly heard, inasmuch as Strider’s death ought to have been suggested, and the appeal revived against ,his representative.
I need not consider how far this Court may amend its judgments and decrees, at a subsequent term, by correcting clerical misprisions in the entries thereof, the question here being of a quite different nature. We are called upon not to amend, but to reverse, annul, or set aside the decree, in order that the appeal may be replaced upon our docket, and heard de novo upon its merits, after a revival thereof against Strider’s representative ; and this, too, upon the application of the adverse party, who might have had the death suggested, and process of revival issued, before the hearing was had in this Court.
It is not .the province of this Court to exercise appellate jurisdiction over its own adjudications, and it has no process adapted to such a purpose. It has no power to award writs of error to its own judgments, or allow appeals from, or bills of review to, its own decrees, for any error of law or of fact appearing upon the face of *81 its records. Nor can it, for errors of fact not apparent upon its records, grant writs of error coram vobis, or entertain bills of review. It is the appellate forum in the last resort, for the revisal of the judgments and decrees of subordinate tribunals, which it may affirm or reverse, with power in case of reversal, to render such adjudication as the inferior Court ought to have rendered. During the same term, its decisions, like those of other Courts of record, are within its own breast, and may be modified or rescinded as a more matured consideration may dictate; but after the end of the term, the merits of its adjudications have passed beyond its control. This finality and irreversibility of the judgments and decrees of this Court is inherent in the very nature and constitution of the tribunal, and cannot be disturbed without deranging the adminstration of justice, and the introduction of intolerable evils in practice.
This Court occupies the like supreme and ultimate position in our judicial system that the House of Lords does in that of England. And in the House of Lords a writ of error coram vobis does not lie for error in fact; for which two reasons are assigned, one technical, and the other politic: the first is that the record itself is not removed thither, but only the transcript thereof, as with us: the other is, that it is below the dignity of the House of Lords, that being the supreme judicature, to examine matters of fact; the substantial meaning of which I take to be, that to do so, would be foreign to the nature and purposes of that tribunal. See 2 Tidd’s Pract. 1057.
It is true, in relation to writs of error coram vobis, that by the act of the 24th of February 1820, Sess. Acts of 1819-20, it is provided, “that writs of error co-ram vobis, and all other writs of error, may be awarded in vacation, by any Judge of the Court of appeals, or General court, or any Superior court of law, or by any *82 two justices of a County or Corporation court, in the same manner and upon the same conditions, as may be awarded by the same Courts respectively in term time ; and that every such writ issued in pursuance of this act operate as a supersedeas.” But this act was not designed to enlarge the powers of the Courts therein mentioned, but only to extend certain then existing powers thereof in term time to Judges thereof respectively in vacation; and must be construed redendo singula singulis, by referring the comprehensive terms, which in the aggregate embrace writs of error of every description, distributively to the appropriate writs of error, of which the respective Courts already had cognizance.
The remedy therefore, for the supposed error or irregularity, by writ of error, coram vobis, would be wholly unwarranted, and moreover utterly inappropriate, it being merely a common law writ, and unheard of in chancery proceedings.
And if we look to a bill of review, it is obvious that in a Supreme court merely appellate, there is no room for its cognizance, the only tribunal in which such a proceeding can originate, being the subordinate Court where the original decree was rendered: and even there jurisdiction of it is taken away by an appellate decree of this Court, after which a bill of review lies only on the ground of the discovery of new matter affecting the merits of the controversy. Campbell v. Price &c. 3 Munf. 227. And matter of abatement is not capable of being shewn by bill of review, as error to reverse a decree. 3 Dan. Chan. Pract. 1728, n; Story’s Eq. Plead. § 411; Mitf. Eq. Pl. by Jery. 85.
If this Court has no process by which to reverse or annul its judgments and decrees of former terms upon the merits, still less can it do so for mere irregularities, and far less by the informal and summary proceeding by motion. Indeed, a final judgment or decree of any *83 Court of record cannot, without the authority of some statute, he rescinded or amended after the expiration of the term at which it was rendered. 3 Chit. Bl. 407; Bank of Virginia v. Craig, 6 Leigh 399. In the case just cited, this Court unanimously overruled a motion for a rehearing, on the ground, “ that it could not set aside its decree entered at a former term, whether it was prematurely decided, or whether it was objectionable on the merits or not.”
With that decision, the case of Wynn v. Wyatt’s adm’r, 11 Leigh 584, cannot be regarded as in conflict. There, it is true, a judgment of this Court of one term was, at the next term thereafter, set aside and a rehearing directed; but the reporter suggests that the motion for it had been made at the previous term, and held under advisement. That this was so, may be inferred from the fact, that no question seems to have been made as to the power of the Court to re-examine its judgment of a former term; a question too grave to have been disregarded, especially after the solemn decision upon that point in the Bank of Virginia v. Craig. And this inference is strengthened by an order of the Court after the allowance of the rehearing, stating that before it was granted, the transcript of the judgment had been improvidently certified to the Court below, and therefore recalling the same.
What I have said is based upon the hypothesis, that there is error or irregularity in fact in the failure to suggest the death of the appellant Strider, and proceeding to the appellate hearing and decree, without a revival of the appeal against his representative; but I am far from entertaining that opinion.
At common law, actions abated by the death of the plaintiff or defendant, and were incapable of revival, though originally maintainable for or against the representative of the deceased. A suit in equity also abated by the death of either party; but, if originally main *84 tainable for or ■ agaiiist' the representative of the deceased, could always be revived by bill of revivor, and. now.by statute may be revived, by scire facias, 1 Rev. Code p. 497. The English statutes, and ours conform? and extended to suits in equity, which authorize revival , by scire facias, have: no application to writs-of error or appeals. These never abated by-the death of either party, (with one exception,) for the reason, I presume, that there is no abatement of the origi-. nal judgment or decree, and the reversal or affirmance thereof is the only matter involved in the appellate-cause. The exception is in the case of-the death of the plaintiff in error,-before his assignment of errors, which probably rests upon the ground that the proceeding. has -not; been perfected,-and there- must be a new writ, of error. This exception prevails in the English practice, the.assignment of errors .being: made there after the writ .of error has'been sued .out-,• and is-in the nature of a declaration, upon which an issue is made up usually .by the plea of in nullo est erratum, which is-in the. nature of a demurrer. It is unknown, however, in our practice, where there are no pleadings in error,, unless of -a release or the like, and the death of cthe plaintiff cannot occur before .the assignment of errors, which is. always made in the petition for the writ.
According to the English practice, if the plaintiff in error dies after the assignment of errors, or the defendant in error dies, whether before or after such assignment, the case proceeds in the names -of the original parties to hearing and judgment, and the original judgment, if -affirmed, is revived in the Court below by scire facias. 2 Tidd’s Pract. 1094. In equity, an appeal-to the House of Lords is prayed for by petition to the House, and-allowed by its order; to which petition an answer is .put in, denying error in the decree and praying its affirmance; upon which issue, or an order of the House in case of default, the appeal is appoint-? *85 ed to be heard. If either party dies before hearing, the appeal is revived, upon petition, in the name of the representative of the deceased. 3 Daniel’s Ch. Pract. 1634, &c.
With us, writs of error or supersedeas and appeals, allowed by this Court, or a Judge thereof in vacation, are prayed for by petition, in which the errors complained of are assigned or set forth; and process is issued and served upon the adverse party, and a hearing is had after appearance by counsel, or in case of default ; without appellate pleadings unless of some extrinsic matter in bar.
And though there is no abatement of appellate causes in this Court, whether of law or equity, and our statutes for revival of actions or suits have no application to them; yet a practice prevails here, probably borrowed in substance from that of the English House of Lords, in equity, requiring in case of the death of either party a revival of the appeal or writ of error by consent or by scire facias. Bank of Alexandria v. Patton, 1 Rob. R. 499. It is, however, a general rule of convenience and policy, applicable only where the death of the party is made known to the Court and suggested on its record; and there may be circumstances under which the suggestion itself will not be permitted by the Court. And if the appellate cause passes through this Court without such suggestion, there is no ground for the imputation of error or irregularity in the proceedings here and the judgment or decree of this Court is remitted to the Court below, and entered upon the record there, and a revival then had there of the original judgment or decree in case of affirmance, or of that of this Court in case of reversal.
I think the motion made by Reid’s adm’r ought to be overruled. To sustain it would introduce a practice fraught with incalculable mischief. Hundreds of causes pass through this Court without information on the *86 part of the Court, or of the counsel concerned, of deaths of parties; and much of our time would be most unprofitably employed, and to the great detriment of suitors, in setting aside our own adjudications, rendered llPoa mature consideration of the merits, for supposed irregularity in the proceedings.
Cabell, P. and Allen and Daniel, Js., concurred in the opinion of Baldwin, J.
Brooke, J. concurred in the judgment.
Motion overruled with costs.